UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LYLE DOHSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:11-CV-099 JD |
| | ) |
| NORFOLK SOUTHERN RAILWAY CO., | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Now before the Court are Norfolk Southern Railway Co.'s motion to exclude expert testimony [DE 37] and its motion for summary judgment [DE 39]. The Court previously ruled on the motion to exclude expert testimony relative to three of plaintiff Lyle Dohse's would-be experts, and took the motion under advisement as to the fourth, Dr. Dennis Gates. [DE 47]. The Court found that Dr. Gates had relied on sufficient facts in reaching his opinion, but the Court was unable to conclude that he had employed a sufficiently reliable methodology and had reliably applied that methodology to the facts of this case, so the Court permitted the parties to file further submissions relative to those factors. Dr. Gates thereafter amended his report and sat for a second deposition, and the parties have supplemented their briefing to address those additional materials.[1] [DE 51, 52, 54, 55]. For the following reasons, Norfolk Southern's motion to exclude is DENIED as to Dr. Gates, and its motion for summary judgment is therefore DENIED as well.

---

[1] Shortly after Mr. Dohse filed his response to Norfolk Southern's supplemental brief, Norfolk Southern moved for leave to file a reply brief. [DE 55]. That motion is GRANTED, and the Court has considered Norfolk Southern's reply, attached as Exhibit A to its motion, in resolving the motion to exclude Dr. Gates' opinion.

A.      **Norfolk Southern's Motion to Exclude Dr. Gates' Expert Testimony**

Norfolk Southern has moved to exclude Dr. Gates' opinion as to the specific causation of Mr. Dohse's condition on the basis that it does not meet the reliability factors under *Daubert* and Rule 702. The factual background relative to Dr. Gates' opinion is set forth in this Court's prior opinion, so the Court recounts those facts only so far as they are pertinent to the issues that remain in dispute. [DE 47 pp. 12–18]. In his original report dated April 13, 2012, Dr. Gates stated that there were "four components" that may have contributed to Mr. Dohse's condition, including "his body type, genetics, trauma and environmental factors with repetitive activities of daily living and employment that promotes wear and tear." [DE 44-2]. He concluded, however, that "the type of work that [Mr. Dohse] did at the railroad definitely was a contributing factor in the arthritic process and the aggravation of his symptoms." [*Id.*].

In its previous order, the Court found that Dr. Gates based his opinion on sufficient facts to satisfy the Rule 702 threshold for admitting expert testimony. [DE 47 pp. 13–15]. However, it was not apparent what methodology Dr. Gates had used in reaching his conclusion, and the Court was likewise unable to discern whether Dr. Gates had reliably applied his methodology to the facts of the case, as required by Rule 702. [DE 47 p. 17 (stating that the Court "cannot conclude on the basis of the present record that Dr. Gates used a reliable methodology and reliably applied that methodology to the facts of the case")]. *See* Fed. R. Evid. 702(c), (d). Because Mr. Dohse had not met his burden of establishing these two elements, the Court took the motion under advisement as to Dr. Gates and permitted the parties to supplement the record relative to those factors. [DE 47, 50].

On January 29, 2014, Dr. Gates submitted an addendum to his original report. In addition to supplementing his catalog of records to include several dozen articles pertaining to vibration and upper extremity conditions, the addendum added the following relative to causation:

2

> Causation remains the same; the type of work that he did at the railroad definitely was a contributing factor in the arthritic process and the aggravation of his symptoms. Other tha[n] his work as a Carman, he did some yard work and household repairs; nothing that would cause arthritis of a joint.
>
> I did consider all of the differential diagnoses.

[DE 51-1]. Dr. Gates thereafter sat for a deposition on February 26, 2014. [DE 52-1]. Counsel for Norfolk Southern devoted most of his examination to the articles Dr. Gates appended to his list of source materials. [*See* 52-1]. However, having already found that Dr. Gates had relied on sufficient facts to qualify his opinion under *Daubert*, the Court need not revisit those considerations here.[2]

In his cross-examination, counsel for Mr. Dohse focused specifically on Dr. Gates' methodology and his application of that methodology to the facts of this case. He first clarified that Dr. Gates had used a differential etiology to reach his conclusion on causation. [DE 52-1 p. 45–46]. He then walked through each of the potential causes that Dr. Gates had ruled in and ruled out in applying the differential etiology. [*Id.* pp. 48–55]. Dr. Gates considered heredity as a possible cause of Mr. Dohse's condition, but ruled that out because Mr. Dohse had no family history for that condition. [*Id.* pp. 44, 51–52]. He also considered whether other medical causes could have contributed to Mr. Dohse's condition. [*Id.* pt. 48]. However, relying on Mr. Dohse's complete medical history as well as his physical examination, Dr. Gates ruled out other medical causes on the basis that Mr. Dohse had no history of or any physical findings for any medical causes that would produce his symptoms. [*Id.* pp. 48–50]. Dr. Gates further considered Mr. Dohse's activities outside of work as a potential cause. [*Id.* p. 52]. Based on his discussion with Mr. Dohse and his review of other materials relative to Mr. Dohse's activities outside of work,

---

[2] Norfolk Southern argues that the vibration studies are irrelevant because Mr. Dohse had not previously alleged any injuries due to vibrations. However, those articles primarily go to the weight and factual basis of Dr. Gates' opinion, not the reliability of his methodology, which is at issue here, so the Court does not rely on those articles in this analysis.

though, Dr. Gates concluded that Mr. Dohse had not engaged in the sorts of activities outside of work that would cause his arthritis, so he ruled that out as well. [*Id.* 52–53; DE 51-1].

Dr. Gates finally considered whether Mr. Dohse's activities at work could have caused his condition. In considering this factor, Dr. Gates relied on his interview with Mr. Dohse, his review of Mr. Dohse's deposition, his review of Mr. Dohse's job description and related materials, and the biomechanical analysis conducted by Dr. Harris relative to the forces Mr. Dohse encountered on the job. [DE 52-1 pp. 54–55]. Based on these sources, Dr. Gates ruled in Mr. Dohse's work activities as a cause of his injuries. [*Id.*]. Dr. Gates therefore concluded that "Mr. Dohse's work at the railroad was a cause in whole or in part or contributed to the shoulder pain that he complains of." [*Id.* p. 55].

Based on this supplemented record, the Court concludes that Dr. Gates employed a sufficiently reliable methodology and reliably applied that methodology to the facts of this case so as to be admissible under Rule 702. Although Dr. Gates' initial report did not reflect the methodology he used in reaching his conclusion, he has now expressly stated that he performed a differential etiology. [*Id.* pp. 49–50]. Differential etiology is the process whereby "the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The Seventh Circuit has accepted this methodology and has found that it passes muster under *Daubert*. *Id.* (noting that there "is nothing controversial about that methodology"); *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 433 (7th Cir. 2013) ("We have recognized this method of differential diagnosis and differential etiology as a generally accepted means for evaluating the cause of a plaintiff's injury."). Therefore, Dr. Gates' methodology satisfies the Rule 702 reliability standard.

The Court similarly concludes that Dr. Gates has reliably applied his methodology to the facts of this case. The hallmark of a differential etiology is that the expert "rule in" and "rule out" potential causes of an individual's ailments. *Myers*, 629 F.3d at 644–45; *Schultz*, 721 F.3d at 433–34. In order to permit the Court to perform its gatekeeping function, the record must therefore reflect that the expert had a basis for ruling in their asserted cause, and that they considered and had a basis for ruling out alternative causes. *Myers*, 629 F.3d at 644; *Schultz*, 721 F.3d at 433–34. Here, Dr. Gates had an adequate basis to rule in Mr. Dohse's work history as a potential cause of his injuries. Dr. Gates was familiar with the activities Mr. Dohse performed in his position, through both his discussions with Mr. Dohse and his review of the record. Dr. Gates also reviewed the biomechanical analysis prepared by Dr. Harris, which concluded that the forces Mr. Dohse encountered in his position were sufficient to cause the injuries he sustained. [DE 52-1 pp. 53–55]. This is an adequate basis on which to rule in Mr. Dohse's work activities. As Norfolk Southern previously noted, Dr. Gates was unaware of Dr. Harris' report at the time he originally offered his opinion. However, while this may be a fertile ground for cross-examination, Dr. Gates has since reviewed the report and may rely on it, so this is not a proper basis on which to exclude his testimony.[3]

Dr. Gates likewise considered various alternative causes and articulated an adequate basis for ruling them out as potential causes. Dr. Gates considered whether heredity, medical causes, or Mr. Dohse's out-of-work activities could have caused his condition. As to each of those alternative causes, Dr. Gates articulated a basis, grounded in specific facts in the case, for his conclusion that they were unlikely to have caused Mr. Dohse's injuries, as detailed above.

---

[3] This also moots the dispute as to whether Dr. Gates was required to rely on quantitative measurements of the forces to which Mr. Dohse was exposed in order to rule in his work activities, since Dr. Harris' report made such measurements.

Accordingly, having ruled in Mr. Dohse's work activities, and having ruled out "his out of work activities, hereditary causes and past and current medical history," Dr. Gates arrived at the conclusion that Mr. Dohse's work activities caused his shoulder condition. [DE 52-1 p. 55]. This suffices under *Daubert*. Any gaps or inaccuracies in Dr. Gates' analysis or factual foundation can be explored on cross examination, but he has demonstrated that his conclusion is not a mere "casual diagnosis that a doctor may offer a friend or acquaintance outside the office about what could be causing his aches and pains," and that it is not simply a "hunch or an informed guess." *Myers*, 629 F.3d at 644–45. Rather, he has used an acceptable methodology and demonstrated that he did so in a reliable manner, so his opinion is admissible under Rule 702. *Schultz*, 721 F.3d at 433–34; *Boyd v. CSX Transport., Inc.*, No. 2:08-cv-108, 2011 WL 854350, at *4–5 (N.D. Ind. Mar. 7, 2011) (admitting an expert opinion based on differential etiology where the expert (coincidentally, Dr. Gates) adequately ruled in and ruled out potential causes of the plaintiff's condition). Norfolk Southern's motion to exclude expert testimony [DE 37] is therefore DENIED as to Dr. Gates.

**B.      Norfolk Southern's Motion for Summary Judgment**

Norfolk Southern has also moved for summary judgment on the sole ground that Mr. Dohse "has no admissible evidence of specific causation of his alleged injuries." [DE 40 p. 5]. This motion was predicated on the success of Norfolk Southern's motion to exclude each of Mr. Dohse's expert opinions on that subject. Having denied the motion as to Dr. Gates, who has offered an admissible opinion that Mr. Dohse's work with Norfolk Southern was the specific cause of his injuries, the Court need not belabor this analysis. Mr. Dohse has offered admissible evidence of the specific causation of his injuries—the only element of his claim that is subject to the motion for summary judgment—so the motion must be denied. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (permitting summary judgment against "a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**C.     Conclusion**

For the foregoing reasons, Norfolk Southern's motion for leave to file a reply brief [DE 55] is GRANTED. However, Norfolk Southern's motion to exclude [DE 37] is DENIED as to Dr. Gates, and its motion for summary judgment [DE 39] is therefore DENIED as well. The Court will set a telephonic scheduling conference in order to set this matter for trial.

SO ORDERED.

ENTERED:  March 18, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court